UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

UNITED STATES OF AMERICA,

v.                                              **Hon. Hugh B. Scott**

                                                13CR20S

JEREMY EDMUND SCOUTEN,                           **Report**
                                                 **&**
                           Defendant.            **Recommendation**

          This matter has been referred to the undersigned pursuant to 28 U.S.C. § 636(b)(1)(C) (text

Order of Jan. 18, 2013).   The instant matter before the Court is defendant's motions to suppress

statements and evidence seized pursuant to a search warrant for defendant's home (Docket

Nos. 31, 39); to controvert that search warrant; a hearing regarding the seizure of all images from

his computers, see United States v. Galpin, 720 F.3d 436 (2d Cir. 2013) (Docket No. 39).

Following the hearing held on July 3, 2014 (Docket Nos. 60 (minutes), 65 (transcript)), defendant

sought (and then declined) leave to make further submissions in the hearing (see Docket No. 61).

Defendant then filed his affidavit regarding his standing to contest the search (Docket No. 62), the

hearing transcript was filed (Docket No. 65), and, after filing post-hearing submissions (see

Docket Nos. 70, 72), the suppression motion was deemed submitted as of February 12, 2015.

## BACKGROUND

          Defendant is charged with two counts of distribution of child pornography, in violation of

18 U.S.C. §2252A(a)(2)(A), for distribution of pornographic material on May 29 and June 25,

2012.   He is also charged with three counts of possession of child pornography on or about

August 6, 2012, for four computers or data storage devices containing child pornography, all in violation of 18 U.S.C. § 2252A(a)(5)(B).   The Indictment also seeks forfeiture of a laptop computer, two computer towers, and a SD card.   (Docket No. 8, Indict.)

The criminal Complaint (Docket No. 1) stated that federal agents conducted an undercover peer-to-peer internet file sharing investigation on May 29 and June 25, 2012 (id. ¶ 4).   On May 29, 2012, the affiant agent downloaded visual depictions of children under the age of 18 years engaged in sexually explicit conduct from one IP address (id. ¶ 5).   On June 25, 2012, that agent downloaded another image of an underage child engaged in sexual conduct from a second IP address (id. ¶ 6).   These two IP addresses are owned by Time Warner Cable and the cable company provided subscriber information, identifying the IP addresses subscriber as the defendant (id. ¶ 7).

Federal agents later obtained a search warrant (issued by this Court) (Docket No. 39, Ex. A) to search 2502 Falls Street, and executed the search warrant on August 6, 2012 (Docket No. 1, Compl. ¶ 8).   During the execution of that warrant, agents spoke with defendant, who allegedly admitted to downloading the child pornography onto his computer and, after seeing the printed images, acknowledged seeing the images (id. ¶¶ 8, 9).   Several items with computer hard drives or data storage were seized and forensically examined (id. ¶¶ 10-11), with visual depictions of children engaged in sexually explicit conduct located on these devices (id. ¶¶ 12-13).

Defendant (among other relief) now moves to suppress statements he made during the August 6, 2012, search of the Falls Street premises (Docket No. 31, Def. Motion ¶ 6; Docket No. 39, Def. Supp'al Motion ¶¶ 15-16).   Defendant believed that he was not free to go and thus was in custody (Docket No. 39, Def. Supp'al Motion ¶¶ 17, 18); in his subsequent affidavit,

defendant explains that, on August 6, 2012, numerous agents came to his house to execute the search warrant and that he believed that he was not free to leave the residence (Docket No. 48, Def. Aff. ¶ 9).   Agents then began to question defendant and he had no recollection whether he was advised of any rights or warnings (id. ¶ 10).   One agent, ICE Investigations Special Agent Edward Williams, stated that defendant had agreed to a consensual non-custodial interview (Docket No. 39, Def. Supp'al Motion ¶ 13).

The Government responds that defendant's statements to law enforcement agents were voluntary and non-custodial, hence should not be suppressed (Docket No. 32, Gov't Response at 5-8), concluding that defendant had not presented definite, specific, detailed or non-conjectural facts that would justify a hearing (id. at 8).   Later, the Government objected to hearings regarding the manner the search warrant was executed because defendant did not demonstrate a lack of probable cause for issuance of search warrant (Docket No. 40, Gov't Response at 1-2; see also Docket No. 50, Gov't Response to Def. Aff. at 1-2).   The Government also argued that defendant did not state any facts that he was in custody or that the statements were obtained unlawfully to support a suppression hearing as to the statements (Docket No. 40, Gov't Response at 2), concluding that defendant was not in custody during that search (id. at 2, 9) and contending that agents told defendant when they commenced the search that he was not under arrest and that he was free to leave (id. at 9).   Defendant agreed to stay and then agreed to engage in a "consensual non-custodial interview" with Government agents, with no restraints on defendant (id.).

*Evidentiary Hearing*

Agent Williams arrived at defendant's residence on August 6, 2012, dressed in issued tactical attire, that is, khaki cargo pants, identification shirt with "police" written on it, and ballistic

vest, with side arms and force weapons, typically worn during execution of search warrants (Docket No. 65, Tr. July 3, 2014, hearing at 8).   When no one answered knocks on the door announcing the search, agents forcibly entered defendant's home (id. at 9-10, 24-25, 27).   The team of agents first cleared the structure for officers' safety and Williams went upstairs to the second floor as part of the sweep, knocking at a door there and (when there was no answer) forcibly entered that room with weapons displayed (id. at 10-11, 27, 47-48).   Williams concedes that defendant was not free to leave when the agents arrived at his bedroom (id. at 49).   The second floor was swept, finding defendant (with knives, rifles and hand guns) (id. at 11).   After securing the premises, the agents began the administrative portion of the search (including interviews, physical searching, and photography) (id. at 12).

Williams went downstairs and returned with his search kit and case file, meeting defendant in the upstairs kitchen (id. at 12; see id. at 49 (two to three minutes after entry)), while defendant was escorted to the kitchen from his bedroom (id. at 35).   Williams conceded that he did not know what force may have been used in escorting defendant to the kitchen (id.).   Williams showed defendant a copy of the search warrant and asked if he was willing to speak with him and whether defendant had to be somewhere while this search was underway (id. at 12-13).   Williams testified that, during this introduction he told defendant that he was free to leave at any time (id. at 13, 14-15 (told that, if he did stay, an agent would have to be with him for officer safety), 17, 42-43).   Williams then stated that defendant said he was willing to speak with the agents (id. at 13).   Defendant answered questions posed to him by the officers (id. at 14) but did not ask to leave or seek counsel before answering questions (id. at 14, 45).   Williams did not recall defendant seeking to leave the kitchen (id. at 46).   The officers had their weapons holstered during the

questioning (id. at 16) and no force was used upon defendant (id. at 22).   Williams did not recall

whether defendant was handcuffed during this interview (id. at 34).   Defendant became "very

hesitant" to answer questions (id. at 16) but he did not state at any point that the interview was over

(id. at 17).   Williams denied threatening defendant or that the other officer present during

questioning (Agent Ouzer) did (id.).   During the interview, Williams showed defendant

downloaded images (id. at 18).   Defendant made statements or admissions during this interview

(id.).   Agent Ouzer made notes of the interview and, after reviewing these notes, defendant signed

them (id. at 19-20, 20-22, 47, Gov't Ex. 4).   Agents gave defendant a receipt of the items seized

(including the firearms) (id. at 20).   Defendant was not arrested that day (id. at 22).   Agent Ouzer

was present during the entire interview (see id. at 47) but Ouzer not called as a witness.

Williams stated that he did not advise defendant of his Miranda rights (id. at 51).   Williams, in

cross-examination, testified that defendant had his driver's license suspended or revoked and had

no means to leave the house (id. at 43-45).   In reply, Williams testified that defendant appears to

understand the questioning (id. at 71).

The Government rested (id. at 77) and defendant sought time to consider whether he would

call witnesses; the hearing was continued on July 10, 2014 (id. at 77, 78).   Defendant then decided

not to call witnesses and the motion was deemed submitted after the filing of the transcript (Docket

No. 61) and post-hearing submissions (Docket Nos. 64, 69; see also Docket Nos. 66, 67, 68).

Defendant, who did not testify at the hearing, argues that he was in custody during this

search and was interrogated without being advised of his rights (Docket No. 70, Def. Memo. at

11).   In an affidavit, defendant states that he resides in the upper apartment of 2502 Falls Street

and utilized the downstairs unit of that premises (Docket No. 62, Def. Atty. Aff. Ex. A, Def. Aff.

¶ 3).   At 7 am on August 6, 2012, three agents (two male and one female) entered defendant's bedroom with weapons drawn (id. ¶¶ 4, 5).   He was ordered out of bed and was handcuffed (id. ¶ 5).

The Government argues that defendant's affidavit should be given little weight since defendant did not testify (or face cross-examination) during the hearing (Docket No.72, Gov't Response at 5).

## DISCUSSION

I.      Suppression of Statements

Defendant seeks to suppress statements from two incidents, the search on August 6, 2012, and his arrest on November 29, 2012.

A.      August 6, 2012, Statements

Defendant states that he was the sole resident of 2502 Falls Street, upper apartment (Docket No. 48, Def. Aff. ¶ 4; Docket No. 62, Ex. A, Def. Aff. ¶ 3).   Defendant argues that, on August 6, 2012, he felt that he was required to stay in the apartment during the search, while the Government states that he was told that it was not an arrest warrant and that he was free to leave (compare Docket No. 48, Def. Aff. ¶ 9, with Docket No. 32, Gov't Response at 7).   Defendant does not assert that weapons were displayed during the search, no physical force was used, and all this occurred at defendant's residence and not at another site (Docket No. 32, Gov't Response at 7), although he states in an affidavit that weapons were drawn during the entry into his bedroom (Docket No. 62, Ex. A., Def. Aff. ¶ 5).

The issues are whether defendant was in custody during the search on that date and whether he was interrogated.   The Miranda warning applies only when a suspect is under custodial

6

interrogation, <u>Miranda v. Arizona</u>, 384 U.S. 444 (1966); <u>Oregon v. Mathiason</u>, 429 U.S. 492, 495 (1977), that is under arrest or otherwise deprived of freedom of action in any significant way, <u>Miranda</u>, <u>supra</u>, 384 U.S. at 444 (Docket No. 32, Gov't Response at 5).   "The ultimate inquiry is simply whether there [was] a formal arrest or restraint on freedom of movement of the degree associated with a formal arrest," <u>California v. Beheler</u>, 463 U.S. 1121, 1125 (1983) (per curiam), manifested by "affirmative indications that the defendant was not free to leave," <u>United States v. Mitchell</u>, 966 F.2d 92, 98 (2d Cir. 1992) (<u>id.</u> at 6).   This is determined on an objective basis, whether a reasonable person in defendant's position would conclude that she or he was in custody, <u>see</u> <u>Berkemer v. McCarty</u>, 468 U.S. 420, 442 (1984) (<u>id.</u>).

Was defendant under constraint during this questioning to make it custodial interrogation that would require advising him of his Fifth Amendment <u>Miranda</u> rights?   Defendant was informed that he was not in custody, that he was free to leave, although he was not advised of his <u>Miranda</u> warning.   Although during the agents' initial entry into his house and his bedroom defendant was not free to leave (with weapons drawn and handcuffed), defendant was questioned in a different room and was not in handcuffs during that questioning.   In the kitchen, he was asked whether he had to be someplace else at that time and was advised that he could leave at any time. Notwithstanding the manner of the agents' entry to execute the search warrant, the evidentiary hearing shows that defendant was free to leave but chose not to and, during the execution of the search, had to have an agent with him.   Defendant did not testify at the hearing and his affidavit only discussed the manner of the agents' entry into his house and bedroom and did not discuss how the kitchen questioning occurred.   This interview thus was not custodial interrogation that would require prior warnings.   Therefore, defendant's motion to suppress should be **denied**.

B.      November 29, 2012, Statements

As for defendant's contention that he was questioned during his subsequent arrest on November 29, 2012, the Government denies that a statement was obtained from defendant that would be suppressed (Docket No. 50, Gov't Response at 2) and it does not intend to introduce against him any such statements (id. at 3).   Therefore, his motion to suppress statements that will not be introduced at trial should be **denied as moot**.

II.     Search Warrant

A.      Contentions

Defendant raises several objections to the search warrant executed at 2502 Falls Street. First, defendant argues that the warrant was overbroad, since the description of the property to be searched included the first floor (which had a commercial operation) while defendant only resided in the second floor (Docket No. 39, Def. Supp'al Motion ¶¶ 6, 25, 55).   From the descriptions of the images contained in the search warrant application, defendant concludes that these were insufficient to establish probable cause that an offense would be committed or that the images could be found at defendant's home, rendering the search general (id. ¶¶ 21, 22).   Defendant next faults the warrant for not incorporating by reference the application, which had the evidence of the commission of a crime, rendering the warrant a general warrant and authorizing agents to generally rummage through defendant's house (id. ¶ 25).   The warrant failed to describe with particularity the items to be seized (id. ¶¶ 27-28, 39).   Defendant sought a hearing as to the scope of the seizure, arguing that the images seized exceeded the scope permitted by the warrant (id. ¶ 42).   As argued below, defendant contends that this warrant is analogous to the warrant faulted in United States v. Galpin, 720 F.3d 436 (2d Cir. 2013) (id. ¶¶ 43-54).   In his own affidavit,

defendant states that he was the sole resident of the upper apartment in 2502 Falls Street (Docket No. 48, Def. Aff. ¶ 4).

The Government responds that the warrant did incorporate by reference the application affidavit and its attachments (Docket No. 40, Gov't Response at 7, <u>see</u> Docket No. 39, Ex. A, Search Warrant[1]) and that application affidavit limited the geographic and subject matter scope of the search to the second floor apartment for the distribution, receipt, transmission, or possession of child pornography (Docket No. 40, Gov't Response at 3, 7).   The Government contends that geographic limitations to the warrant arise from the investigation disclosing the location of the computer for the I.P. addresses that allegedly received pornography, coupled with public records and observation of the first floor, which identified the second floor apartment of 2502 Falls Street as the target for the search (<u>id.</u> at 3).   The Government contends that the warrant was supported by probable cause (<u>id.</u> at 2, 6).   Alternatively, the Government concludes that, under <u>United States v. Leon</u>, 468 U.S. 897 (1984), the agents relied upon a facially valid warrant in good faith, thus the items they recovered are excepted from any exclusionary rule (<u>id.</u> at 2, 8).

B.      Application

Determining whether to issue a search warrant is based upon the totality of the circumstances before the issuing magistrate that there is a fair probability that contraband or evidence of a crime will be found in a particular place, <u>Illinois v. Gates</u>, 462 U.S. 213 (1983) (Docket No. 40, Gov't Response at 4).   The issuing magistrate's determination of probable cause enjoys great deference upon review, <u>id.</u> at 236 (<u>id.</u>), such as present here.

---

[1]"The person or property to be searched, described above, is believed to conceal . . . : Evidence pertaining to the distribution, receipt, transmission, and possession of child pornography, as more fully set forth in Attachment B which attached hereto and incorporated by reference herein, concerning a violation of Title 18 U.S.C. §§ 2252 and 2252A."

Defendant faults the warrant for not expressly incorporating the application, thus depriving the warrant of probable cause (Docket No. 39, Def. Supp'al Motion ¶¶ 25, 34, 36, 39).   But the warrant incorporated by reference an attachment to the warrant application affidavit (id., Ex. A, search warrant).

Defendant argues that the search warrant was too general in describing the area to be searched, the purpose for the search, and the items to be seized.   When considering the warrant with the incorporated application, the area to be searched is particular, that is defendant's second floor apartment in 2502 Falls Street.   The totality of the warrant and incorporated application, probable cause was established to issue the warrant.   Investigators linked peer-to-peer file sharing of child pornography to I.P. addresses that were connected to defendant's computer and located at 2502 Falls Street premises.   That location was focused to the upper apartment through surveillance of the downstairs unit (shown not to be occupied) and the fact that defendant was the only occupant of the building.

Given this finding that probable cause existed for the warrant, this Court need not address the Government's alternative Leon good faith argument.

III.    Galpin and Scope of Search Warrant

The Fourth Amendment to the Constitution prohibits unreasonable searches and seizures and requires that any warrant for a search must be supported by an oath or affirmation "particularly describing the place to be searched, and the persons or things to be seized," U.S. Const. amend. IV. This amendment was to avoid "'indiscriminate searches and seizures' conducted by the British 'under the authority of "general warrants."'"   Payton v. New York, 445 U.S. 573, 583 . . . (1980); Arizona v. Gant, 556 U.S. 332, 345, . . . (2009)," Galpin, supra, 720 F.3d at 445.   Particularity has

three components:   identification of the specific offense; the description of the place to be

searched; and specify the items to be seized by their relation to the offense, Galpin, supra, 720 F.3d

at 445-46.

Under Galpin, supra, 720 F.3d at 446-48, 446 n.6, computer hard drives are analogized to

residences for Fourth Amendment purposes and warrants to search hard drives require

particularization to avoid a warrant to search an entire computer becoming a general warrant, but

cf. Riley v. California, ___ U.S. ___, 134 S.Ct. 2473, 2489, 2491 (2014) (cell phone search would

expose to the Government far more than an exhaustive search of a house, since a house would not

contain all the private data placed on a cell phone, in effect a minicomputer).

Here, defendant challenges as overly broad the warrant seeking to search all files on his

computers and other listed digital storage devices.

The court in Galpin contended with a warrant application and warrant with references to

violations of general statutes that the court held lacked probable cause, 720 F.3d at 447, and then

analyzed whether part of the warrant could be salvaged through severance, id. at 448-50.   Here,

the Government argues that there was sufficient probable cause for the search warrant here

(Docket No. 40, Gov't Response at 2).   Thus, the issue is not an overly general alleged criminal

violation that opened defendant's computer to scrutiny; rather, the affidavit in support of the

warrant established that IP addresses later located at defendant's house were engaging in

peer-to-peer exchange of contraband material.   The warrant authorized in this case sought

evidence pertaining to distribution, receipt, transmission, and possession of child pornography, in

violation of 18 U.S.C. §§ 2252, 2252A, to search for images of child pornography on the various

computers and other data storage devices listed in the attachment to the warrant (see Docket

No. 39, Def. Supp'al Memo., Ex. A).   Unlike the items to be searched and seized in <u>Galpin</u>, <u>supra</u>, 720 F.3d at 441, the warrant here specified that the data storage devices listed contained, possessed or received child pornography (<u>id.</u>).   The problem in <u>Galpin</u> was the absence of probable cause for a specific offense to justify the warrant and the failure of the property description to specify an offense.   Such specificity occurred with the search warrant of 2502 Falls Street in this case.

As for the particularity within 2502 Falls Street, the Government argues that the lower unit appeared unoccupied and that, through the IP address, and public records, established that defendant was in the upper unit of those premises (Docket No. 40, Gov't Response at 3, 6). Severability is not required here since this search warrant had probable cause to support it.   Also, this Court need not reach the Government's argument that the agents, in good faith, relied upon the facially valid warrant, <u>see</u> <u>United States v. Leon</u>, 468 U.S. 897 (1984).

Upon the totality of the circumstances presented, <u>see</u> <u>Gates</u>, <u>supra</u>, 462 U.S. 213, and the deference this Court has to give to the issuing magistrate, <u>id.</u> at 236, defendant's motion to suppress (as supplemented, Docket Nos. 31, 39) should be **denied**.

## CONCLUSION

Based upon the above, it is recommended that defendant motion (Docket Nos. 31, 39) to suppress statements and evidence be **denied** as to defendant's August 6, 2012, statement, and **denied as moot** for his November 29, 2012, statements.   Suppression of the evidence obtained pursuant to the search warrant executed for 2502 Falls Street (Docket Nos. 31, 39) should be **denied**.

Pursuant to 28 U.S.C. § 636(b)(1), it is hereby ordered that this Report & Recommendation be filed with the Clerk of the Court and that the Clerk shall send a copy of the Report & Recommendation to all parties.

**ANY OBJECTIONS to this Report & Recommendation must be filed with the Clerk of this Court within fourteen (14) days after receipt of a copy of this Report & Recommendation in accordance with 28 U.S.C. § 636(b)(1), Fed. R. Civ. P. 72(b) (effective December 1, 2009) and W.D.N.Y. Local Civil Rule 72.3(a).**

**FAILURE TO FILE OBJECTIONS TO THIS REPORT & RECOMMENDATION WITHIN THE SPECIFIED TIME OR TO REQUEST AN EXTENSION OF SUCH TIME WAIVES THE RIGHT TO APPEAL ANY SUBSEQUENT DISTRICT COURT'S ORDER ADOPTING THE RECOMMENDATIONS CONTAINED HEREIN.** Thomas v. Arn, 474 U.S. 140 (1985); F.D.I.C. v. Hillcrest Associates, 66 F.3d 566 (2d Cir. 1995); Wesolak v. Canadair Ltd., 838 F.2d 55 (2d Cir. 1988).

The District Court on de novo review will ordinarily refuse to consider arguments, case law and/or evidentiary material which could have been, but was not, presented to the Magistrate Judge in the first instance.   See Patterson-Leitch Co. Inc. v. Massachusetts Municipal Wholesale Electric Co., 840 F.2d 985 (1st Cir. 1988).

Finally, the parties are reminded that, pursuant to W.D.N.Y. Local Civil Rule 72.3(a)(3), "written objections shall specifically identify the portions of the proposed findings and recommendations to which objection is made and the basis for such objection and shall be supported by legal authority."   **Failure to comply with the provisions of Rule 72.3(a)(3) may result in the District Court's refusal to consider the objection.**

13

SO ORDERED.

_/s/ Hugh B. Scott_
Hon. Hugh B. Scott
United States Magistrate Judge

Dated: Buffalo, New York
        March 2, 2015